UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHADLEN SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>NURSE BOZLEY and DEPUTY L. SIMMONS,<br><br>    Defendants. | Case No. 1:12-cv-00441-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

  Currently pending before the Court is Defendants Simmons and Bozley's Motion for Summary Judgment (Dkt. 22).

  Plaintiff, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), is proceeding pro se in this civil rights action. All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 17.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will decide this matter on the record without oral argument. D. Idaho L. R. 7.1.

## INTRODUCTION

Plaintiff alleges that, while he was detained at the Kootenai County Jail on August 22, 2010, Deputy Simmons and Nurse Bozley assaulted him and used excessive force in violation of the Eighth Amendment prohibition against cruel and unusual punishment. (Compl., p. 2 (Dkt. 3.)) Upon initial review, the Court found Plaintiff had stated a colorable claim and could proceed on his claims. (Dkt. 7.)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**1.     Factual Background**

This section includes facts that are undisputed and material to the resolution of the motion pending in this case. Where material facts are in dispute, the Court has included both versions of fact, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

On August 22, 2010, Plaintiff was an inmate at the Kootenai County Jail, housed in C-Pod. Plaintiff had previously been prescribed pain medication by the jail's health care provider, Dr. Kennedy, for back pain. This included two hydrocodone pills and one morphine pill, all prescribed to be taken twice daily. (Holecek Aff., ¶¶ 5-6 & Ex. A (Dkts. 22-3, -4.)) The dispensing of inmate medications during August of 2010 was done by the jail's medical staff via the medical cart. The medical staff would take the medical

**Memorandum Decision and Order - 2**

cart to each housing pod within the jail to dispense the prescribed medication. (Bozley Aff., ¶ 4 (Dkt. 22-5); Simmons Aff., ¶ 5 (Dkt. 22-6.)) The medical staff on duty would distribute the medication to the inmate with the assistance of a detention deputy who would provide security to the medical staff. (Bozley Aff., ¶¶ 5, 11; Simmons Aff., ¶ 6.)

On the morning of August 22, 2010, Nurse Wendy Bozley and Lt. Linda Simmons were in charge of dispensing medication to the inmates, including Plaintiff. There is only one inmate allowed at the medication cart at any one time for security purposes. The door to the C-Pod cell is opened and the medical cart is placed inside the doorway; the inmate stands inside the cell doors and the staff members stand outside the cell doors with the medical cart placed in between the inmate and the staff. (Bozley Aff., ¶ 7; Simmons Aff., ¶¶ 8-9.)

Jail policy is that inmates are required to swallow their medications at the time they are received from the staff member. This is done to prevent the hoarding of narcotics which some inmates do to sell their medication to other inmates. This poses a health, safety and security risk--the jail has a zero tolerance policy for those caught hoarding. To confirm that the medication has been swallowed, jail staff and medical staff examine the inmate's mouth to ensure the pill is swallowed and not "cheeked," in an effort to hoard the medication. (Bozley Aff., ¶ 9; Simmons Aff., ¶ 10; Holecek Aff., ¶¶ 12-13 & Ex. C.)

On the morning of August 22, 2010, Plaintiff went to the designated location to receive his medication. He put the pills in his mouth and acted as though he swallowed

**Memorandum Decision and Order - 3**

the medication. Bozley ordered Plaintiff to open his mouth so she could verify that he swallowed his pills. (Bozley Aff. ¶¶ 8, 10; Simmons Aff., ¶ 12.) Plaintiff opened his mouth and pulled his right cheek out with his finger. Bozley asked Plaintiff to pull his cheek open on the upper left side. Bozley attests that she could see a white pill hidden in Plaintiff's upper left cheek area. (Bozley Aff., ¶ 10; Simmons Aff., ¶ 13.) Plaintiff attests that he swallowed the pills. (Pl.'s Aff., ¶ 3 (Dkt. 34-2.))

Bozley told Plaintiff to spit out the pill. Instead, Plaintiff backed away and turned as if to leave the medical cart. Bozley then reached across the medical cart with her right hand and grabbed hold of Plaintiff's shirt, hooking two fingers in the bottom of the v-neck collar to prevent him from going back into the pod. (Bozley Aff. ¶¶ 10, 11; Simmons Aff., ¶ 14.)

These facts are disputed by Plaintiff. He attests that Bozley "unexpectedly lunged" at him while he was showing her that he did not have medication in his mouth, scratched his neck with her fingers and pinned him against the medical cart and "sadistically" yelled at him: "give it to me; spit it out; don't fuck with me." (Pl.'s Aff., ¶¶ 7, 8, 11.)

As Bozley grabbed Plaintiff's shirt, Simmons also reached across the medical cart with her right hand and put a "place hold" or "choke hold" on Plaintiff's lower neck. According to Simmons, it was a "light" hold. Simmons claims she did this so that Plaintiff would not attack Bozley after Bozley grabbed Plaintiff's shirt. Once Simmons had a hold on Plaintiff, Bozley released her hold on the shirt. (Bozley Aff. ¶ 13;

**Memorandum Decision and Order - 4**

Simmons Aff. , ¶ 16.)

Simmons and Bozley were standing across the medical cart from Plaintiff during the entire incident, which made Simmons' hold on Plaintiff loose and awkward. According to Defendants, Plaintiff did not pull away from Simmons or Bozley nor did he struggle against them. Further, they claim Plaintiff did not show signs of discomfort or complain about any pain. (Bozley Aff., ¶¶ 13, 16; Simmons Aff., ¶¶ 17, 18.)

Plaintiff states he tried to pull his head back and signal his need for oxygen. He claims he lost consciousness[1] for an unknown amount of time because of the force both Simmons and Bozley were applying to his neck. (Pl.'s Aff., ¶¶ 9, 11, 12, 13.)

Bozley informed Plaintiff that, due to his attempt to hoard medication, she would advise Dr. Kennedy to discontinue his morning prescriptions. Plaintiff became upset with Bozley and began to argue with her to convince her that he was not hoarding his medication. During this argument, Simmons maintained her hold on Plaintiff. After the brief argument, Plaintiff opened his mouth to show that he had not cheeked his medication. By that time, according to Simmons, Plaintiff had swallowed the pill. Simmons released her hold and Plaintiff was ordered back to his cell. (Bozley Aff., ¶¶ 14-16; Simmons Aff., ¶ 20.) According to Defendants, this entire incident lasted no longer than 20 to 30 seconds. (Simmons Aff., ¶ 25.)

Due to Plaintiff's attempt to hoard his medication, Simmons initiated a disciplinary

---

[1] Plaintiff claims he likely remained standing when he lost consciousness due to the hold being placed on him by Simmons. (Pl.'s Aff., ¶ 13.)

**Memorandum Decision and Order - 5**

action. Also due to this, Dr. Kennedy discontinued Plaintiff's morning dose of pain medication and requested that the medication be crushed before administering it to Plaintiff. (Bozley Aff., ¶ 18; Holecek Aff., Ex. B.)

After the incident, there is no record that Plaintiff required any medical attention or complained to jail staff about pain related to the incident. Plaintiff did submit several grievances in which he mentioned the "assault" and the fact that his morning narcotics had been discontinued. But Plaintiff did not attribute any pain to the assault in these grievances. (Holecek Aff., Ex. E; Bozley Aff., ¶ 19; Simmons Aff., ¶¶ 21-22.)

Plaintiff claims he submitted a kite for medical treatment on August 23, 2010. (Pl.'s Aff., ¶ 17.) The kite he references, however, asks only that his morning pain medication be reinstated because his back pain was severe and that he was "assaulted" by medical staff and a deputy on August 22, 2010. (Pl.'s Aff., Ex. 2 (Dkt. 34-4.))

2.  **Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

**Memorandum Decision and Order - 6**

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be a *genuine* dispute as to a *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The

**Memorandum Decision and Order - 7**

existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).[2] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

The Court does not determine the credibility of affiants or declarants, or weigh the

---

[2] In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

**Memorandum Decision and Order - 8**

evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

3.      **Excessive Force Standard of Law**

The Cruel and Unusual Punishment Clause of the Eighth Amendment protects prisoners[3] from the use of excessive physical force. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). To state an Eighth Amendment claim, a plaintiff must allege that the use of force was an "unnecessary and wanton infliction of pain." *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. *Hudson*, 503 U.S. at 9; *see also Oliver v. Hudson*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force,

---

[3] While it is not clear from Plaintiff's complaint whether he was a pretrial detainee at the time of the incident at issue, the Idaho Repository indicates that on August 22, 2010, Plaintiff had been convicted and was awaiting sentencing. *See* https://www.idcourts.us/repository/caseHistory.do?roaDetail=yes&schema=KOOTENAI&partySequence=462282&county=Kootenai&displayName=Smith%2C+Chadlen+Dwayne. In *Resnick v. Hayes*, the Ninth Circuit held that a convicted but unsentenced prisoner should be treated as a sentenced inmate and not a pretrial detainee. 213 F.3d 443, 448 (9th Cir. 2000). Accordingly, Plaintiff's allegations are properly considered under the Eighth Amendment standard, rather than the Fourteenth Amendment, which applies to pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520 (1979). *But cf. Whitley v. Albers*, 475 U.S. 312, 324-27, 106 S.Ct. 1078, 1087-88 (1986) (on a claim of excessive force, the protections of the substantive due process clause of the Fourteenth Amendment are coextensive with the protections of the Eighth Amendment's cruel and unusual punishment clause).

not de minimis injuries).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.  Whether force used by prison officials was excessive is determined by inquiring if the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id*. at 6-7.

In *Whitley v. Albers*, 475 U.S. 312 (1986), the Supreme Court of the United States set forth factors to consider when evaluating an excessive force claim: 1) the need for application of force; 2) the relationship between the need to use force and the amount of force used; 3) the threat perceived by the officer; 4) any effort to temper the severity of the forceful response; 5) the extent of the injury inflicted; and 6) whether the force was applied for a legitimate purpose.

**4.     Excessive Force Discussion**

Defendants have presented affidavits explaining that the grabbing of Plaintiff's shirt collar by Nurse Bozley and the placing of a choke-hold on his neck by Simmons were acts taken to prevent Plaintiff from returning to his cell with medication still in his mouth and to confirm he swallowed his medication.  Plaintiff does not dispute that the reason Bozley and Simmons grabbed his shirt and placed a hold on him was to prevent him from returning to his cell because they believed he was hoarding medication.   He does dispute whether he was actually "cheeking" his medication and instead, claims he had swallowed it and disputes the amount of force that was used on him.

There are several genuine issues of material fact that defeat summary judgment in

**Memorandum Decision and Order - 10**

Defendants' favor. First, there is a dispute whether there was a need for the application of force; that is, was Plaintiff actually hoarding his medication? While this first factor would likely favor Defendants as long as they had an honest belief that he was attempting to hoard his medication, whether he was in fact hoarding medication is in dispute. Also of importance is the factual question surrounding whether the amount of force used was reasonable in relation to the need to use force. While some force might be justified when a prisoner is suspected of hoarding medication, whether the use of a chokehold, that may or may not have caused Plaintiff to lose consciousness, is appropriate under the circumstances is a question of fact that prevents summary judgment.

Also preventing summary judgment is the dispute as to whether there was any effort taken by the defendants to temper the severity of their forceful response. Defendants claim Plaintiff was told to spit out his medication prior to grabbing him. Plaintiff claims he was lunged at and grabbed before Bozley yelled at him: "Spit it out!"

Last, the extent of Plaintiff's injury is challenged. Plaintiff claims Bozley scratched his neck and that he lost consciousness as a result of the chokehold that Simmons had on his neck. Defendants assert that Plaintiff exhibited no signs of discomfort and did not struggle while he was being held, and that he did not seek medical treatment or complain of pain after the incident.

The Court concludes that there are genuine issues of material fact and Defendants have not shown that they are entitled to judgment as a matter of law on Plaintiff's excessive force claims against Bozley and Simmons. Construing the facts in favor of

**Memorandum Decision and Order - 11**

Plaintiff as the non-moving party, there is evidence from which the jury could find for Plaintiff on those claims. Summary judgment will be denied.

5.  **Deliberate Indifference Standard**

In his response brief, Plaintiff also alleges that defendants[4] were deliberately indifferent to his medical needs following the incident that occurred on August 22, 2010. He states he submitted numerous medical request kites about his neck. (*See* Dkt. 34, p. 5.)

To state a claim under the Eighth Amendment, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

As to the objective standard, the Supreme Court has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

---

[4] Plaintiff appears to specifically take issue with Dr. Kennedy, who is not a named Defendant in this case.

**Memorandum Decision and Order - 12**

> [F]ailure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

As to the subjective factor, to violate the Eighth Amendment a prison official must act in a manner that amounts to deliberate indifference, which is "more than ordinary lack of due care for the prisoner's interests or safety," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Stated another way, deliberate indifference exists when an "official knows of and [recklessly] disregards an excessive risk to inmate health or safety," which means that he or she "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand

specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

The kites that Plaintiff references complain of his pain medication being discontinued; they do not mention pain suffered as a result of the incident in question. (Pl.'s Aff., Ex. 2.) He complains in these kites that he was "assaulted" but does not allege any pain from the "assault." He only states that his back pain is bothering him because he is not taking his medication. There is no mention of neck pain. Further, none of these deliberate indifference allegations are contained in Plaintiff's Complaint (Dkt. 3) and neither Defendant Bozley or Defendant Simmons are mentioned in Plaintiff's allegations regarding his medical treatment. (*See* Pl.'s Aff. ¶¶ 17-26 (Dkt. 34-2); Pl.'s Response, p. 5 (Dkt. 34)). The case is not properly postured for the Court to consider Plaintiff's allegations of deliberate indifference against anyone but Defendants Bozley and Simmons. Because he does not allege, nor show, any personal participation by these two Defendants in his complaints of deliberate indifference, Plaintiff has not stated a claim upon which relief can be granted.

Additionally, Plaintiff cannot raise a new claim in a responsive brief. This claim,

**Memorandum Decision and Order - 14**

to the extent he is alleging one, will not be considered.

## ALTERNATIVE DISPUTE RESOLUTION

This case is now positioned to be set for trial. Plaintiff shall consult with Defendants' counsel no later than 14 days after entry of this Order, to determine whether Plaintiff and any Defendant are willing to attend a judicial settlement conference with a United States Magistrate Judge to attempt to settle the issues remaining for trial. If so, Defendants' counsel shall file a request for referral to a settlement conference. Otherwise, this case will be set for a jury trial.

## APPOINTMENT OF COUNSEL

If Plaintiff wishes to have pro bono counsel appointed, either to represent him at trial or at the settlement conference, or to have counsel in "stand-by" capacity, he shall file a request with the Court within 30 days after entry of this Order. The pro bono coordinator and liaison will then attempt to find counsel willing to represent Plaintiff in a pro bono or other capacity.

## ORDER

**IT IS HEREBY ORDERED:**

1) Defendants' Motion for Summary Judgment (Dkt. 22) is DENIED.

2) Plaintiff shall consult with Defendants' counsel **no later than 14 days** after entry of this Order, to determine whether a judicial settlement conference should be set. If the parties agree, then Defendants' counsel shall file a request for referral to a settlement conference.

**Memorandum Decision and Order - 15**

3) Plaintiff shall file a request for counsel, if so desired, within **30 days** after entry of this Order.



DATED: October 15, 2014

Honorable Candy W. Dale
United States Magistrate Judge

**Memorandum Decision and Order - 16**